1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8

9  GERALD L. TUCKER,                          )    1:04-cv-05773-LJO-TAG HC
                                              )
10                      Petitioner,           )    FINDINGS AND RECOMMENDATIONS TO
                                              )    DENY PETITION FOR WRIT OF HABEAS
11                                            )    CORPUS (Doc. 1)
                                              )
12             vs.                            )    ORDER DIRECTING THAT OBJECTIONS
                                              )    BE FILED WITHIN FIFTEEN DAYS
13                                            )
    STUART J. RYAN, Warden,                   )
14                                            )
                                              )
15                      Respondent.           )
                                              )
16                                            )
                                              )
17  _____ )

18         Petitioner is a state prisoner proceeding pro se with a Petition for Writ of Habeas Corpus

pursuant to 28 U.S.C. § 2254.

19
20                               **PROCEDURAL HISTORY**

21         Petitioner is in custody of the California Department of Corrections and Rehabilitation as

a result of a July 8, 2002 conviction in the Superior Court of California, County of  Tulare (the

22  "Superior Court") for custodial possession of a weapon by an inmate (Cal. Pen. Code § 4502(a)),

23  with a true finding as to four prior violent or serious felony convictions within the meaning of

24  California's Three Strikes Law, as well as a true finding as to a prior prison term within the

25  meaning of California Penal Code § 667.5(b).  (Clerk's Transcript on Appeal ("CT") 159-160,

26  192-193).  Petitioner was sentenced to an indeterminate term of 25 years to life, plus a one-year

27  enhancement, for a total sentence of 26 years to life.  (CT 192-193).

28

Petitioner filed a direct appeal in the California Court of Appeals, Fifth Appellate District (the "5th DCA"). (Lodged Document ("LD") 4).   On December 5, 2003, the 5th DCA affirmed the conviction for the substantive offense, but reversed a portion of Petitioner's sentence, holding that insufficient evidence supported a 1955 burglary conviction used as a prior strike to enhance Petitioner's sentence. (LD 4).  The 5th DCA remanded the case to the Superior Court for the sole purpose of determining the truth of the 1955 conviction. (Id.).

On January 13, 2004, Petitioner filed a state court petition in the California Supreme Court.  (LD 5).  The California Supreme Court denied the petition on February 23, 2004.  (LD 6).  Petitioner also filed various state court habeas petitions.  They will be discussed only when relevant to specific issues in the instant petition.

On May 27, 2004, Petitioner filed the instant petition.  (Doc. 1).[1]   On December 9, 2004, Respondent filed a motion to dismiss the petition as a mixed petition containing unexhausted claims.  (Doc. 20).  On March 11, 2005, the Court issued Findings and Recommendations concluding that grounds two and three were exhausted, but that portions of grounds one and four were unexhausted.  (Doc. 28).  On August 3, 2005, Petitioner was permitted to withdraw his unexhausted claims and proceed with the exhausted claims.  (Doc. 38).

Respondent contends that grounds one and four are procedurally barred because Petitioner failed to raise them in his direct appeal to the 5th DCA and later in the petition for review in the California Supreme Court.  (Doc. 43, p. 3).  Respondent contends that those grounds were first raised in a state court habeas petition that was denied by the California Supreme Court as procedurally barred on December 23, 2003.  (Id.).

## FACTUAL BACKGROUND

The Court adopts the Factual Summary contained in the 5th DCA's unpublished opinion:

The charges stemmed from an incident that occurred during the preliminary hearing in an unrelated case in which appellant was charged with, and ultimately convicted of, murder. Appellant, who was seated at counsel table and upset when held to answer on the murder charge, stood up and slashed his throat with a disposable razor blade.  Sheriff deputies wrestled with appellant and ultimately removed the razor blade from appellant's fist.  The

---

[1]Respondent alleges that the instant petition was filed on October 4, 2004.  (Doc. 43, p. 3).  This is incorrect.  As indicated, the Court's filing system indicates that the petition was filed on May 27, 2004.

1    incident was caught on videotape–apparently made by a local media company–which
2    included a brief picture of the victim and views of appellant in physical restraints.  The
     tape was shown to the jury at the trial in this case.  Appellant was sentenced as a third
3    striker to an indeterminate term of 25 years to life, plus an additional one year for the
     prior prison term.

4    (LD 4, p. 2).

5                                             **DISCUSSION**

6            **I. Jurisdiction**

7            Relief by way of a petition for writ of habeas corpus extends to a person in custody

8    pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or

9    treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor,

10   529 U.S. 362, 375 n. 7, 120 S. Ct. 1495 (2000).  Petitioner asserts that he suffered violations of

11   his rights as guaranteed by the United States Constitution.  The challenged conviction arises out

12   of the Tulare County Superior Court, which is located within the jurisdiction of this court.

13   28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).  Accordingly, the Court has jurisdiction over this

14   action.

15           On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

16   ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

17   Lindh v. Murphy, 521 U.S. 320, 326, 117 S.Ct. 2059 (1997); Jeffries v. Wood, 114 F.3d 1484,

18   1499 (9th Cir. 1997), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320 (holding the

19   AEDPA only applicable to cases filed after statute's enactment).  The original petition was filed

20   on May 27, 2004, after the enactment of the AEDPA, and thus it is governed by the AEDPA.

21           **II.  Legal Standard of Review**

22           A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless

23   the adjudication of a prisoner's claim (1) "resulted in a decision that was contrary to, or involved

24   an unreasonable application of, clearly established Federal law, as determined by the Supreme

25   Court of the United States" or (2) resulted in a decision that "was based on an unreasonable

26   determination of the facts in light of the evidence presented in the State court proceeding."

27   28 U.S.C. § 2254(d);  Lockyer v. Andrade, 538 U.S. 63, 70-71, 123 S. Ct. 1166 (2003);

28   Williams v. Taylor, 529 U.S. at 412-413.

                                                    3

1    The first prong of federal habeas review involves the "contrary to" and "unreasonable

2  application" clauses of 28 U.S.C. § 2254(d)(1).  This prong pertains to questions of law and

3  mixed questions of law and fact.  <u>Williams v. Taylor</u>, 529 U.S. at 407-410;  <u>Davis v. Woodford</u>,

4  384 F.3d 628, 637 (9th Cir. 2004).  A state court decision is "contrary to" clearly established

5  federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme

6  Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a

7  [Supreme Court] decision but reaches a different result."  <u>Brown v. Payton</u>, 544 U.S 133, 141,

8  125 S. Ct. 1432 (2005)(citing <u>Williams v. Taylor</u>, 529 U.S. at 405).  A state court decision

9  involves an "unreasonable application" of clearly established federal law "if the state court

10  applies [the Supreme Court's precedents] to the facts in an objectively unreasonable manner."

11  <u>Brown v. Payton</u>, 544 U.S. at 141.  Consequently, a federal court may not grant habeas relief

12  simply because the state court's decision is incorrect or erroneous; the state court's decision must

13  also be objectively unreasonable.  <u>Wiggins v. Smith</u>, 539 U.S. 510, 511, 123 S. Ct. 2527 (2003),

14  (citing <u>Williams v. Taylor</u>, 529 U.S. at 409).  Section 2254(d)(1)'s reference to "clearly

15  established Federal law" refers to "the holdings, as opposed to the dicta, of [the Supreme]

16  Court's decisions as of the time of the relevant state-court decision."  <u>Williams v. Taylor</u>, 529

17  U.S. at 412; <u>Lockyer v. Andrade</u>, 538 U.S. at 412; <u>Barker v. Fleming</u>, 423 F. 3d 1085, 1093 (9th

18  Cir. 2005).

19    The second prong of federal habeas review involves the "unreasonable determination"

20  clause of 28 U.S.C. § 2254(d)(2).  This prong pertains to state court decisions based on factual

21  findings.  <u>Davis v. Woodford</u>, 384 F.3d at 637 (citing <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 123

22  S.Ct. 1029 (2003)).  Under § 2254(d)(2), a federal court may grant habeas relief if a state court's

23  adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable

24  determination of the facts in light of the evidence presented in the State court proceeding."

25  <u>Wiggins v. Smith</u>, 539 U.S. at 520;  <u>Jeffries v. Wood</u>, 114 F.3d at 1500 (when reviewing a state

26  court's factual determinations, a "responsible, thoughtful answer reached after a full opportunity

27  to litigate is adequate to support the judgment").  A state court's factual finding is unreasonable

28  when it is "so clearly incorrect that it would not be debatable among reasonable jurists."  <u>Id.</u> ; <u>see</u>

4

1    Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543

2    U.S. 1038, 125 S. Ct. 809 (2004).  The AEDPA also requires that considerable deference be

3    given to a state court's factual findings.  A state court's factual findings are  presumed to be

4    correct, and the presumption of correctness may be rebutted only by clear and convincing

5    evidence.  28 U.S.C. § 2254(e)(1).

6         To determine whether habeas relief is available under § 2254(d),  the federal court looks

7    to the last reasoned state court decision as the basis of the state court's decision.  Robinson v.

8    Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state court decided the petitioner's

9    claims on the merits but provided no reasoning for its decision, the federal habeas court must

10   independently review the record to determine whether habeas corpus relief is available under

11   § 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d

12   976, 981-982 (9th Cir. 2002).  Where the state court denied the petitioner's claims on procedural

13   grounds or did not decide the claims on the merits, the deferential standard of the AEDPA does

14   not apply and the federal court must review the petitioner's 's claims de novo.  Pirtle v. Morgan,

15   313 F.3d 1160, 1167 (9th Cir. 2002).

16        **III.  Review of Petitioner's Claims**

17        The petition alleges the following grounds for relief:[2]

18   **Ground One**          **Whether California Penal Code § 4502(a) applies to Petitioner
                              and whether the trial court erred in permitting the verdict to**
19                           **be read in Petitioner's absence.**

20   **Ground Two**          **Whether Petitioner's constitutional rights were violated by
                              prosecutorial misconduct in the playing of a videotape for the**
21                           **jury.**

22   **Ground Three**        **Whether Petitioner's Sixth Amendment right to counsel was
                              violated by the trial court's denial of his Marsden motion.**
23   ///

24

25        [2]The original petition contained a series of sub-issues, especially in Grounds One and Four, not discussed

26   below.  However, following the Court's order to Respondent to file an answer, Respondent filed a motion to dismiss
     the petition as containing unexhausted claims (Doc. 20), and the Court issued Findings and Recommendations to

27   grant the motion to dismiss, concluding that those particular sub-issues in Grounds One and Four had not been
     exhausted.  (Doc. 28).  Subsequently, Petitioner requested leave to withdraw those unexhausted claims (Doc. 36),

28   and the District Judge adopted the Magistrate Judge's Findings and Recommendations, permitting Petitioner to
     withdraw his unexhausted claims.  (Doc. 38).  Thereafter, the case has proceeded only on those fully exhausted
     claims set forth below and discussed in these Findings and Recommendations.

1     **Ground Four**          **Whether sufficient evidence was presented to support the**
2                              **conviction for possession of a weapon by an inmate.**

3     **A.  Grounds One and Four Are Procedurally Barred**

4          Respondent contends that Petitioner's claims in Grounds One and Four are procedurally

5     barred from federal habeas review because they were not raised on direct appeal, a fact that the

6     California Supreme Court cited, referring to Ex parte Dixon, 41 Cal.2d 756, 759 (1953), in

7     denying those grounds in Petitioner's final state court habeas petition.   (Doc. 43, p. 3; Lodged

8     Document ("LD") 3, p. 2).  The Court agrees.

9          A federal court will not review claims in a petition for writ of habeas corpus when the

10    state court denied relief on those claims based on a state procedural law that is both independent

11    of federal law and adequate to support the judgment.  Ylst v. Nunnemaker, 501 U.S. 797,  801,

12    111 S. Ct. 2590 (1991);  Coleman v. Thompson, 501 U.S. 722, 729-730, 111 S.Ct. 2546 (1991).

13    "A district court properly refuses to reach the merits of a habeas petition if the petitioner has

14    defaulted on the particular state's procedural requirements and is unable to demonstrate cause and

15    prejudice or a fundamental miscarriage of justice."  Park v. California, 202 F.3d 1146, 1150 (9th

16    Cir. 2000).  This doctrine of procedural default is based on concerns of comity and federalism.

17    Coleman, 501 U.S. at 730-732.

18         The mere occurrence of a procedural default will not necessarily bar a federal court from

19    reviewing claims in a petition for writ of habeas corpus.  For the procedural default doctrine to

20    apply and thereby bar federal review, the state court must also "'clearly and expressly' state that

21    its judgment rested on a state procedural bar."  Harris v. Reed, 489 U.S. 255, 263, 109 U.S. 1038

22    (1989)(citing Caldwell v. Mississippi, 472 U.S. 320, 327, 105 S.Ct. 2633 (1985) (quoting

23    Michigan v. Long, 463 U.S. 1032, 1040-1041, 103 S.Ct. 3469 (1983)).

24         1. State Law Procedural Ground - the Dixon Rule

25         The first step in deciding whether there has been a procedural default is to determine

26    whether the state court clearly and expressly denied relief on a state procedural ground.  Here,

27    Petitioner pursued a direct appeal, but did not raise, in the context of that direct appeal, Grounds

28    One and Four contained in his federal habeas petition.  Rather, Petitioner presented those claims

for the first time in his "round" of state habeas petitions filed to exhaust those claims.  (LD 1, 2, & 3).

Respondent correctly notes that the California Supreme Court order denying Petitioner's state habeas petition expressly cited Ex parte Dixon, which provides that:

> The general rule is that habeas corpus cannot serve as a substitute for an appeal, and, in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from the judgment of conviction.

Dixon, 41 Cal. 2d at 759. (LD 3, p. 1).  Pursual to the Dixon rule, in a habeas corpus proceeding, a California court will not review the merits of a claim if that claim could have been raised in a timely appeal, but was not.

As the last state court to give a reason for its judgment, the California Supreme Court denied the petition unambiguously on state law procedural grounds, i.e., the Dixon rule.  The next step is to determine whether the Dixon rule is both independent of federal law and adequate to support the judgment. If it is, habeas relief is procedurally barred.

2. Independence

Even when a petitioner has violated a state procedural law, the procedural default doctrine does not bar federal habeas relief unless the state procedural law is both independent of federal law and adequate to support the judgment.  Coleman, 501 U.S. at 729-732, 735.  For a state procedural rule to be independent of federal law, "the state law basis for the decision must not be interwoven with the federal law."  La Crosse v. Kernan, 244 F.3d 702, 704 n. 6 (9th Cir. 2001) (citing Michigan v. Long, 463 U.S. at 1040-1041, and Harris, 489 U.S. at 265)); Morales v. Calderon, 85 F.3d 1387, 1393 (9th Cir. 1996) (quoting Coleman, 501 U.S. at 735).  A state law ground is interwoven with federal law if "the state has made application of the procedural bar depend on an antecedent ruling on federal law [such as] the determination of whether federal constitutional error has been committed."  Park, 202 F.3d at 1152 (quoting Ake v. Oklahoma, 470 U.S. 68, 75, 105 S.Ct. 1087 (1985)).

The Ninth Circuit Court of Appeals determined that prior to 1998, the Dixon rule was not independent of federal law.  Park v. California, 202 F.3d at 1152-1153.  In Park, the Ninth Circuit

1  reasoned that because a fundamental constitutional error exception to the <u>Dixon</u> rule existed

2  under state law, application of the <u>Dixon</u> rule necessarily involved consideration of federal law

3  issues and therefore was "interwoven with the federal law." <u>Id.</u>  Two years earlier, the California

4  Supreme Court explicitly stated that it would no longer consider whether an error alleged in a

5  state petition constituted a federal constitutional violation.  <u>In re Robbins</u>, 18 Cal.4th 770, 811-

6  812 & n. 32 (1998).  In making it clear that it would no longer consider federal law in applying

7  the <u>Dixon</u> rule and its exceptions, the California Supreme Court stated:

8
> [W]e shall, in this case and in the future, adopt the following approach as our standard
> practice.  We need not and will not decide whether the alleged error actually constitutes a
9
> federal constitutional violation.  Instead, we shall assume, for the purpose of addressing
> the procedural issue, that a federal constitutional error is stated, and we shall find the
10
> exception inapposite if, based upon our application of state law, it cannot be said that the
> asserted error "led to a trial that was so fundamentally unfair that absent the error no
11
> reasonable judge or jury would have convicted the petitioner."

12  <u>In re Robbins</u>, 18 Cal. 4th at  811-812 & n.32 (quoting <u>In re Clark</u>, 5 Cal. 4th at 750, 797 (1993)).

13      In 2003, the Ninth Circuit decided that the California Supreme Court's denial of a  habeas

14  petition for untimeliness constituted an independent and adequate state ground barring federal

15  habeas relief:

16
> [W]e respect the California Supreme Court's sovereign right to interpret its state
> constitution independent of the federal law.  Applying <u>Robbins</u> prospectively, we affirm
17
> the district court's determination that the California Supreme Court's post-<u>Robbins</u> denial
> of [a] state petition for lack of diligence (untimeliness) was not interwoven with federal
18
> law and therefore is an independent procedural ground.

19  <u>Bennett v. Mueller</u>, 322 F. 3d 573, 582-583 (2003).  Thus, application of the untimeliness bar is

20  now independent of federal law.

21      Although <u>Bennett</u> did not involve the <u>Dixon</u> rule per se, its rationale applies with equal

22  force to a post-<u>Robbins</u> application of  the <u>Dixon</u> bar because the <u>Dixon</u> bar and the untimeliness

23  bar are both subject to analogous constitutional error exceptions and state court consideration of

24  post-<u>Robbins</u> applications of these bars no longer involves federal law. <u>See La Crosse</u>, 244 F.3d at

25  707, n. 29; <u>Bennett</u>, 322 F.3d at 1583; <u>In re Robbins</u>, 18 Cal. 4th at 811-812 & n.32.  Thus, the

26  Court concludes that a post-<u>Robbins</u> invocation of the <u>Dixon</u> rule is independent of federal law.

27      To determine whether the state court's application of the <u>Dixon</u> rule is independent of

28  federal law in this case, the Court must look at the state decision invoking the <u>Dixon</u> rule.  <u>See</u>

1  <u>Bennett</u>, 322 F. 3d at 582-583; <u>Park</u> 202 F.3d at 1153; <u>La Crosse</u>, 244 F. 3d at 707.  Here, the

2  Superior Court invoked the <u>Dixon</u> rule when it denied Petitioner's habeas petition on December

3  23, 2003.  (LD 3, p. 1).  <u>Robbins</u> was decided on August 3, 1998.  Because the state court's

4  application of the <u>Dixon</u> rule was "post-<u>Robbins</u>," and therefore predicated only upon

5  consideration of state law, it was independent of federal law regardless of whether the Court looks

6  at Petitioner's first or last state habeas petition.

7        3. <u>Adequacy</u>

8        A state procedural rule on which the state relies to establish a procedural default must also

9  be "adequate to support the judgment." <u>Coleman</u>, 501 U.S. at 735.  A state procedural law is

10  adequate to support the judgment when it is "well-established and consistently applied." <u>Bennett</u>,

11  322 F.3d at 582 (citing <u>Poland v. Stewart</u>, 169 F. 3d 573, 577 (9th Cir. 1999)).  The question of

12  whether a state procedural default rule is well-established and  consistently applied is determined

13  when the actual default occurs, not when the state court applies its procedural rule to bar the

14  petitioner's claim.  <u>Fields v. Calderon</u>, 125 F.3d 757, 760-761 (9th Cir. 1997); <u>Calderon v. U.S.</u>

15  <u>Dist. Court for the Eastern Dist. of California</u>, 103 F.3d 72, 75 (9th Cir. 1996)(relevant time to

16  assess application of the <u>Dixon</u> rule is when petitioner "had an opportunity to raise the claims on

17  direct appeal").  <u>See Calderon v. Bean</u>, 96 F.3d 1126, 1131 (9th Cir. 1996) (evaluating the <u>Dixon</u>

18  rule at the time petitioner filed a direct appeal).  Here, the relevant date is February 14, 2003,

19  when Petitioner filed his opening brief on direct appeal.[3]  Thus, the appropriate inquiry is whether

20  the <u>Dixon</u> rule was well-established and consistently applied as of February 14, 2003.

21  ///

22

23        [3]The Court may take notice of facts that are capable of accurate and ready determination by resort to
   sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); <u>United States v. Bernal-Obeso</u>, 989
24  F.2d 331, 333 (9th Cir. 1993). The record of a state court proceeding is a source whose accuracy cannot reasonably
   be questioned, and judicial notice may be taken of court records. <u>Mullis v. United States Bank. Ct.</u>, 828 F.2d 1385,
25  1388 n.9 (9th Cir. 1987); <u>Valerio v. Boise Cascade Corp.</u>, 80 F.R.D. 626, 635 n. 1 (N.D.Cal.1978), <u>aff'd</u>, 645 F.2d
   699 (9th Cir. 1981); <u>see also</u> Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989); Rodic v.
26  Thistledown Racing Club, Inc., 615 F.2d 736, 738 (6th. Cir. 1980). As such, the internet website for the California
   Courts, containing the court system's records for filings in the Court of Appeal and the California Supreme Court,
27  are subject to judicial notice. Respondent asserts in his answer that the filing date was February 19, 2003 (Doc. 43,
   p. 2); however, he provides no documentation or references to support such an assertion.  Accordingly, the Court has
28  accessed the California Court of Appeal's electronic database and determined that Case No. F041408, Petitioner's
   direct appeal, was commenced on September 9, 2002 with the filing of the notice of appeal and that Petitioner filed
   his opening brief, as indicated, on February 14, 2003.

1      a. <u>Well-Established</u>

2     In <u>Park</u>, the Ninth Circuit analyzed California's procedural limitations on habeas corpus

3 claims, including the <u>Dixon</u> rule, and found that prior to 1993, they were "undefined and

4 imprecise." <u>Park</u>, 202 F.3d 1151-1153. As a result, the Ninth Circuit determined that such state

5 procedural bars were neither well-established nor consistently applied prior to 1993. <u>Id.</u>  In its

6 analysis, the Ninth Circuit noted the California Supreme Court's decisions in <u>In re Clark</u>,5 Cal.

7 4th 750 (1993) and <u>In re Harris</u>, 5 Cal. 4th 813 (1993) and evaluated their respective impact upon

8 applications of the untimeliness rule and the <u>Dixon</u> rule:  "These decisions were intended to

9 'reestablish California's procedural rules governing state habeas petitions and clearly define and

10 limit the applicable exceptions.'" <u>Park</u>, 202 F.3d at 1151-1152 (quoting <u>Fields</u>, 125 F.3d at 763-

11 774).

12     The California Supreme Court decided both <u>In re Clark</u> and <u>In re Harris</u> on July 29, 1993.

13 <u>In re Clark</u>, 5 Cal.4th 750; <u>In re Harris</u>, 5 Cal. 4th 813. Thus, these decisions had been the law for

14 almost ten years before Petitioner's procedural default occurred on February 14, 2003.  The <u>Dixon</u>

15 rule was established in 1953, when <u>Ex parte Dixon</u> was decided. <u>Ex parte Dixon</u>, 41 Cal. 2d 756.

16 Given the longstanding tenure of the <u>Dixon</u> rule, and the California Supreme Court's decisions

17 "clearly defin[ing] and limit[ing] its applicable exceptions," the Court concludes that the <u>Dixon</u>

18 rule was well-established at the time of Petitioner's February 14, 2003 procedural default. <u>Fields</u>,

19 125 F.3d at 763-764.

20      b. <u>Consistently Applied</u>

21     The Court next considers whether the <u>Dixon</u> rule was consistently applied at the time of

22 Petitioner's procedural default.  The Ninth Circuit established a burden-shifting process to

23 determine whether a state procedural rule is adequate:

24     Once the state has adequately pled the existence of an independent and adequate state
procedural ground as an affirmative defense, the burden to place that defense in issue

25 shifts to the petitioner.  The petitioner may satisfy this burden by asserting specific factual
allegations that demonstrate the inadequacy of the state procedure, including citation to

26 authority demonstrating inconsistent application of the rule.  Once having done so,
however, the ultimate burden is the state's.

27 <u>Bennett</u>, 322 F.3d at 586.

28

1
2
3
4
5
6
7
8

In his answer to the petition, Respondent alleges that "Petitioner's grounds one and four are procedurally barred because he failed to raise them first in his direct appeal to the 5th DCA and later on petition for review in the California Supreme Court." (Doc. 43, p. 3.) Respondent's supporting attached memorandum of points and authorities specifically identifies the defaulted claims and discusses the applicable rules regarding a <u>Dixon</u> default. (Doc. 43, pp. 9-10.) Respondent has thus satisfied his initial burden of pleading the existence of an independent and adequate state procedural ground as an affirmative defense, and thereby shifted the burden to place that defense in issue to Petitioner.

9
10
11
12
13
14
15
16
17
18
19
20

In order to meet his burden under <u>Bennett</u>, Petitioner need only assert specific factual allegations that demonstrate the inadequacy of the <u>Dixon</u> rule, including citations to authority demonstrating an inconsistent application of the <u>Dixon</u> rule as of May 1999. <u>Id.</u> In his traverse, Petitioner failed to make any factual allegations demonstrating the inconsistent application of the <u>Dixon</u> rule. (Doc. 46.) Indeed, Petitioner's only response to Respondent's claim of procedural default is his contention that, as a layman, he was unaware when he filed his first two state habeas petitions in the Superior Court and the Court of Appeal that his direct appeal was still "in litigation." (Doc. 46, p. 12.) Such an argument, however, does not respond to Respondent's procedural default allegation in any fashion. (<u>Id.</u>) Consequently, Petitioner has not met his burden of demonstrating inconsistent application of the <u>Dixon</u> rule.[4] Thus, the Court concludes that Respondent has satisfactorily established that the state court's application of the <u>Dixon</u> rule was an adequate state ground for rejection of Petitioner's claims.

21

4. <u>Cause and Prejudice Exception</u>

22
23
24
25

If the respondent has asserted the procedural default doctrine in a timely and proper fashion, and if the default provides an independent and adequate state procedural ground for decision, the  petitioner is barred from raising the defaulted claims unless he can 1) excuse the default by demonstrating *cause* for the default and *actual prejudice* as a result, *or* 2) show that the

26
27
28

---

[4] The same burden-shifting analysis and result applies to the question of whether the <u>Dixon</u> rule was consistently applied at the time of Petitioner's default.  <u>Bennett's</u> burden-shifting analysis assesses adequacy, and adequacy relates to whether the state law ground for decision is  "well-established and consistently applied." <u>Bennett</u>, 322 F.3d at 583.

case falls within the category of cases the Supreme Court has characterized as fundamental miscarriages of justice. <u>Harris</u>, 489 U.S. at 262; <u>Coleman</u>, 501 U.S. at 751. Cause is a legitimate excuse for the default. <u>Thomas v. Lewis</u>, 945 F.2d 1119, 1123 (9th Cir. 1991). Cause exists if the petitioner can show that some objective factor external to the defense impeded efforts to comply with the state's procedural rules. <u>Coleman</u>, 501 U.S. at 753; <u>Murray v. Carrier</u>, 477 U.S. 478, 488, 106 S.Ct. 2639 (1986); see <u>McCleskey v. Zant</u>, 499 U.S. 467, 493, 111 S.Ct. 1454 (1991). Prejudice is a legitimate excuse for the default. <u>Thomas</u>, 945 F.2d at 1123. Actual prejudice exists if the errors complained of created more than a possibility of prejudice; they must have "worked to [the petitioner's] *actual* and substantial disadvantage, infecting [the petitioner's] entire trial with error of constitutional dimensions." <u>United States v. Frady</u>, 456 U.S. 152, 170, 102 S. Ct. 1584 (1982)

Here, Petitioner failed to show good cause for his failure to present Grounds One and Four in his direct appeal. Contrary to Petitioner's assertions, the fact that his direct appeal was ongoing when he filed his first two state habeas petitions raising these claims does not establish an excuse from default but rather is a clear indication that, had Petitioner chosen to do so, he <u>could</u> have raised those same claims during the direct appeal itself. The Court has reviewed the record and finds nothing to support a finding of good cause. Likewise, Petitioner presents no argument for, and makes no showing of, actual prejudice.

    5. Fundamental Miscarriage of Justice

A petitioner who cannot show cause and prejudice for his procedural default can still bring his claims in a federal habeas petition if he can demonstrate that failure to consider his claims will result in a "fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 750. "[T]he principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'" <u>Murray</u>, 477 U.S. at 495 (quoting <u>Engle v. Isaac</u>, 456 U.S. 107, 135, 102 S. Ct. 1558 (1982)). A fundamental miscarriage of justice occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Schlup v. Delo</u>, 513 U.S. 298, 327, 115 S.Ct. 851 (1995) (quoting <u>Murray</u>, 477 U.S. at 495-496); <u>Boyd. v. Thompson</u>, 147 F. 3d 1124, 1127 (9th Cir. 1998).

12

Here, although Petitioner does challenge the applicability of California Penal Code § 4502 to his situation, and, therefore, Petitioner believes he was "illegally" convicted (Doc. 46, p. 9), nowhere does Petitioner assert that, if § 4502 does apply to him, that he is factually innocent. Indeed, the evidence of Petitioner's guilt was overwhelming and Petitioner offered no factual rebuttal in defense at trial.  Thus, it does not appear to the Court that a "constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup, 513 U.S. at 327. Accordingly, even if Petitioner's allegations can be construed as an implicit claim of actual innocence, they do not rise to the level of a "fundamental miscarriage of justice" sufficient to excuse the absence of cause for the default, and the record here does not support such an inference.

Accordingly, for the reasons stated above, the Court finds that Respondent has timely and adequately raised the procedural default doctrine, and Petitioner's claims in Grounds One and Four  are procedurally barred from federal habeas review.  However, even assuming, arguendo, that these claims were not procedurally barred, they must nevertheless be denied on their merits.

**B.  Petitioner's Substantive Claims Should Be Denied** [5]

**Ground One:**          **Whether California Penal Code sec. 4502(a) Applies To Petitioner and Whether The Court Erred In Permitting The Verdict To Be Read In Petitioner's Absence.**

Petitioner initially contends that (1) the statute on which his conviction was based, California Penal Code § 4502(a), did not apply to him, and therefore his conviction and sentence was illegal, and (2) the verdict was erroneously read while Petitioner was absent.  (Doc. 1, p. 5).[6] Even assuming, arguendo, that Ground One was not procedurally barred, these claims are without merit.

///

[5]Here, because the state court provided no reasoning for its decision other than procedural default, the Court independently reviews the record to determine whether under the AEDPA,  the state court properly denied habeas relief, focusing on whether the state court's resolution of the petitioner's claim was an unreasonable application of clearly established federal law.  See Greene v. Lambert, 288 F. 3d 1081, 1088-1089 (9th Cir. 2002); Delgado, 223 F.3d 976, 981-982 (9tyh Cir. 2000).

[6]Petitioner also claims, redundantly, it turns out, in Ground One that the trial court violated his constitutional right to due process by denying his motion to replace trial counsel. (Doc. 1, p. 5). However, since this same issue is contained in Ground Three, it will be addressed in that context, rather than in Ground One.

First, Petitioner's contention that § 4502 did not apply to him because he was an inmate of the county jail is simply incorrect.  Section 4502(a) provides in pertinent part as follows:

> (a) Every person who, while at or confined in any penal institution, while being conveyed to or from any penal institution, or while under the custody of officials, officers, or employees of any penal institution, possesses or carries upon his or her person or has under his or her custody or control any instrument or weapon of the kind commonly known as a blackjack, slingshot, billy, sandclub, sandbag, or metal knuckles, any explosive substance, or fixed ammunition, any dirk or dagger or sharp instrument, any pistol, revolver, or other firearm, or any tear gas or tear gas weapon, is guilty of a felony and shall be punished by imprisonment in the state prison for two, three, or four years, to be served consecutively.

Subdivision (c) defines "penal institution" to mean "the state prison, a prison road camp, prison forestry camp, or other prison camp or farm, or *a county jail* or county road camp." (Emphasis supplied).  Thus, the plain meaning of the statute directly negates Petitioner's contention regarding his status as a county jail inmate.

Second, Petitioner's contention that his constitutional rights were violated when the "verdict was rendered with petitioner being held in the court house holding cell without his presence to hear the verdict in person," (Doc. 1, p. 5A1), is without merit.

Under clearly established United States Supreme Court precedent, "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure."  Kentucky v. Stincer, 482 U.S. 730, 745, 107 S. Ct. 2658 (1987); Campbell v. Rice, 302 F.3d 892, 898 (9th Cir. 2002). "The constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment, but we have recognized that this right is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him."  United States v. Gagnon, 470 U.S. 522, 526, 105 S.Ct. 1482 (1985)(citation omitted); Campbell v. Wood, 18 F.3d 662, 671 (9th Cir. 1994).  The due process clause guarantees the defendant the right "to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge."  Stincer, 482 U.S. at 745 (quoting Snyder v. Massachusetts, 291 U.S. 97, 105-106, 54 S. Ct. 330, 332 (1934)).  Thus, "an accused has a right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings."  Faretta v. California, 422 U.S. 806, 819-820 & n.

15, 95 S.Ct. 2525 (1975); <u>Rushen v. Spain</u>, 464 U.S. 114, 117, 104 S. Ct. 453 (1983)(right to be present attaches "at all critical stages of the trial."). However, the right does not attach "'when [his] presence would be useless, or the benefit but a shadow.'" <u>Stincer</u>, 482 U.S. at 745 (quoting <u>Snyder</u>, 291 U.S. at 106-107); <u>see also</u> <u>Gagnon</u>, 470 U.S. at 527(constitutional right of presence not implicated if defendant cannot do or gain anything by being present).

Moreover, for purposes of addressing Petitioner's specific contention here, a defendant may waive his or her constitutional right to be present at all critical stages of the proceedings "provided such waiver is voluntary, knowing, and intelligent." <u>Campbell</u>, 18 F.3d at 671-672 (citing <u>Johnson v. Zerbst</u>, 304 U.S. 458, 464 , 58 S. Ct. 1019 (1938)).  Here, Petitioner clearly waived his right to be present for the reading of the verdict.

Respondent has cited a specific portion of the Reporter's Transcript to substantiate his contention that Petitioner voluntarily absented himself from the reading of the verdict.  (Doc. 43, p. 13).  However, Respondent did not make that portion of the Reporter's Transcript part of the record before this Court.  Therefore, the Court will have to assess Petitioner's argument in light of his entire absence from the trial, not merely from the reading of the verdict.  Thus, if Petitioner knowingly and intelligently waived his presence at trial, then, necessarily, he also waived his presence at the reading of the verdict, which is clearly part of the trial proceedings.  Viewed in that context, the Court reaches the same conclusion, i.e., that Petitioner waived his right to be present.

Initially, Petitioner requested and was granted the right to be absent from the in limine motions proceedings.  (RT 7).  Subsequently, Petitioner advised the trial court that he did not want to be part of the trial, and that he "would rather sit it out and let you go ahead," than participate.  (RT 16-17).  The trial judge advised Petitioner that the decision to be present or not was his and his alone: "It's up to him.  It's his call.  He can be present.  He can leave.  He can come to it.  He can do whatever he wants."  (RT 19-20).  After the adverse ruling regarding the <u>Marsden</u> motion, Petitioner's absence was duly noted by the court clerk in the minutes for that proceeding: "Defendant declined to be present during trial."  (CT 101).

///

15

1    On the final day of trial, the proceedings commenced at 10:05 a.m. (CT 159).  The court

2    clerk duly noted again that "Defendant declines to be present."  (Id.).  Final arguments were

3    given, the jury instructed, and, at 10:50 a.m., the jury began its deliberations.  (Id.).  At 11:15

4    a.m., the jury reached a verdict which was read in court without Petitioner's presence.  (Id.).

5    This chronology establishes that Petitioner was aware of his right to attend any and all of

6    the court proceedings in his case, that the decision to attend was his and his alone, but that he

7    nevertheless declined to be present.  Accordingly, the Court has no alternative but to conclude

8    that Petitioner knowingly and voluntarily waived his right to be present for the reading of the

9    verdict, just as he had waived his right to attend all other previous facets of his trial.  Accordingly,

10   because of Petitioner's knowing and voluntary waiver of his right to be present, there is no

11   constitutional violation.  Campbell, 18 F.3d at 671-672.

12   Moreover, even had a violation of Petitioner's constitutional rights occurred, the error

13   would be harmless.  A violation of a defendant's due process right to be present at critical stages

14   of trial is subject to harmless error analysis. See United States v. Frazin, 780 F.2d 1461, 1469 (9th

15   Cir. 1986).  In Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710 (1993), the U.S. Supreme

16   Court substantially restricted state prisoners' access to federal habeas relief by requiring a

17   showing that the violation of a federally guaranteed right had a "substantial and injurious effect or

18   influence in determining the jury's verdict."  Brecht, 507 U.S. at  623 (quoting Kotteakos v.

19   United States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)).  In order for an error to have a

20   "substantial and injurious effect or influence," it must have "affected the verdict."  O'Neal v.

21   McAnnich, 513 U.S. 432, 115 S.Ct. 992, (1995).   Thus, if the evidence is not merely sufficient,

22   but so powerful, overwhelming, or cumulative that the error simply could not reasonably said to

23   have substantially swayed the jury's judgment, the error is not harmful.

24   Here, no such showing is possible.  The jury deliberated for no more than twenty-five

25   minutes, clearly indicating that they felt the evidence of Petitioner's guilt was straightforward and

26   overwhelming, a conclusion readily confirmed by even a cursory review of the evidence in this

27   record.  Petitioner was, at all times during trial, represented by counsel who safeguarded

28   Petitioner's interests, even though Petitioner himself had voluntarily absented himself from the

1
2
3
4

trial, including the reading of the verdict.  Thus, under these circumstances, it cannot be

concluded that Petitioner's absence from that final aspect of trial, even if technically erroneous for

some reason, had a "substantial and injurious effect or influence" in determining Petitioner's guilt

or that it "affected the verdict."  Accordingly, any error would be harmless under <u>Brecht</u>.

5
6

        **Ground Two:**                **Whether Petitioner's Constitutional Rights Were Violated By Prosecutorial Misconduct In The Playing Of A Videotape For The Jury.**

7
8
9

       Petitioner next contends that he was deprived of a fair trial because of prosecutorial

misconduct that resulted in the jury hearing and seeing a videotape of Petitioner.  (Doc. 1, p. 5).

This contention is also without merit.

10

       The 5th  DCA explained how this issue arose and trial and then addressed it as follows:

11
12
13
14

    First, there was no misconduct by the prosecutor with respect to the introduction of the video tape, the audio portion of which disclosed the nature of the charge–murder–involved in the prior action.  Before playing the tape for the jury, the prosecutor informed the court that there would be no accompanying audio.  The court, however, asked "Why don't we have sound."  After an ensuing bench discussion, the court misunderstood the prosecutor's reason for wanting to play the tape without audio and ordered that the tape be played with it.

15
16

    Thus, it was action by the court, not action by the prosecutor, that caused the subject disclosure to the jury. [Citations omitted.]

17
18
19
20

    Secondly, even if there was prosecutorial misconduct, it did not prejudice appellant.  The jury acquitted appellant of the battery charge, the offense most susceptible to jury influence by suggestions of a violent nature.  In addition, the court told the jury the audio portion of the tape contained irrelevant and inadmissible evidence, and, when the tape was sent to the jury room, the foreman was given explicit instructions by the court that the jurors could not listen to the audio part of the tape.  There is no evidence these instructions were disregarded.

21
22
23
24

    Finally, the evidence proving appellant committed the weapons offense was essentially uncontroverted at trial.  He was indisputably an inmate, and the video tape, even without audio, established that he possessed the razor blade.  Appellant presented no factual defense to the charge; his defenses were purely legal–whether the razor blade was a deadly weapon and whether appellant was a state prisoner.  We are satisfied beyond a reasonable doubt that the result of the trial would not have been more favorable to appellant had the audio part of the tape, or, for that matter, the momentary image of the victim, not bee exposed to the jury.

25

(LD 4, pp. 2-4)(Citations omitted.)

26
27
28

       At trial, during the direct examination of John Setser, one of the sheriff's deputies who

restrained Petitioner when he slashed his neck with the razor, the prosecution played a videotape

1   of the incident that contained an audio portion with a media reporter's voice over explaining that

2   Petitioner had been attending a preliminary hearing for a charge of murder.  Upon the playing of

3   the audio portion of the tape for the jury, defense counsel moved for a mistrial on the grounds that

4   the audio portion of the tape disclosed that the charge at the preliminary hearing during which

5   Petitioner slashed his neck with the razor was murder.  (RT 67-68).  In addressing the motion for

6   mistrial, the court later recounted its earlier ruling regarding the playing of the tape and explained

7   the nature of its misunderstanding with the prosecutor as follows:

8       Before the tape was played, the prosecutor approached the bench with counsel and stated
        that he did not want–he wanted to play the tape without the sound. [Defense] Counsel was
9       present and I asked him why the sound wasn't going to be played and defense counsel said
        that there was sound on his copy of the tape, and I assumed from that that counsel had
10      heard the tape..., [¶] I asked the prosecutor why he wanted to play the tape without sound
        and he said there was an over voice from the reporter.  I assumed from that that he meant
11      the court reporter rather than a newspaper reporter.  There was no objection on the part of
        the defense counsel.  And the Court told the prosecutor to play the tape with the sound.

12      I think it's unfortunate.  But again when counsel said it was a reporter's over voice, I
13      assumed he was talking about the court reporter. [¶] If I had known that there was a
        newspaper reporter commenting on these proceedings, I would have been more
14      circumspect in telling counsel to play the tape with the sound.

15  (RT 68-70).

16      Immediately after realizing its mistake, the trial court instructed the jury that it could not

17  consider the nature of the charges in the other case during its deliberations of the charges in the

18  instant case.  (RT 54).

19      Under these circumstances, the Court agrees with the 5th DCA's conclusion that any error

20  was harmless.

21      A habeas petition will be granted for prosecutorial misconduct only when the misconduct

22  "so infected the trial with unfairness as to make the resulting conviction a denial of due process."

23  Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464 (1986) (quoting Donnelly v.

24  DeChristoforo, 416 U.S. 637,  94 S.Ct. 1868 (1974)); see Bonin v. Calderon, 59 F.3d 815, 843

25  (9th Cir. 1995).  To constitute a due process violation, the prosecutorial misconduct must be "of

26  sufficient significance to result in the denial of the defendant's right to a fair trial."  Greer v.

27  Miller, 485 U.S. 756, 765, 107 S.Ct. 3102 (1987) (quoting United States v. Bagley, 473 U.S. 667,

28  676, 105 S.Ct. 3375 (1985)). Under this standard, a petitioner must show that there is a reasonable

1  probability that the error complained of affected the outcome of the trial - i.e., that absent the

2  alleged impropriety, the verdict probably would have been different.

3       Here, as the 5th DCA explained, the error clearly was the result of the trial court's

4  insistence, not the prosecutor's, that the tape be played with both audio and video.  The record

5  establishes that the trial court misunderstood the prosecutor's reason for not using the audio,

6  apparently believing that the voice over by a "reporter" referred to a court reporter rather than a

7  member of the media.  Moreover, it does not appear that the trial court realized that the voice over

8  would refer to the nature of the charge at the preliminary hearing, i.e., murder.  Finally, it appears

9  that the trial court misconstrued defense counsel's comment that his version of the tape had audio

10  as an indication that defense counsel had listened to the audio portion and found it contained

11  nothing objectionable.

12       From the foregoing, it is clear that the error was judicial, not prosecutorial.  From that

13  standpoint, there can be, technically,  no "prosecutorial" misconduct since any misconduct

14  resulted from the trial judge's insistence on playing the audio tape, not the prosecutor's.

15       Nevertheless, it appears that an error did occur and that the 5th DCA recognized as much.

16  However, the Court agrees with the 5th DCA that any error was harmless. As mentioned, in order

17  to obtain federal habeas relief, an violation of a federally guaranteed right must have had a

18  "substantial and injurious effect or influence in determining the jury's verdict."  Brecht, 507 U.S.

19  at 623.  In order for an error to have a "substantial and injurious effect or influence," it must have

20  "influenced the jury's decision." O'Neal, 513 U.S. at 436.   Here, given the overwhelming

21  evidence of guilt, the speed of deliberations, the lack of questions by the jury, the lack of any

22  factual defense by Petitioner, as well as the prompt admonition to the jury given by the trial judge

23  after the audio portion was played, collectively satisfy this standard.  The Court concludes that the

24  error did not have a substantial or injurious effect or influence on the case nor did it influence the

25  jury's decision.  Accordingly, any error was harmless.  Since the 5th DCA reached this same

26  conclusion, its decision was neither contrary to nor an unreasonable application of clearly

27  established federal law.  Hence, Ground Two must be denied.

28  ///

1

**Ground Three**       **Whether Petitioner's Sixth Amendment right to counsel was**
**violated by the trial court's denial of his <u>Marsden</u> motion.**

2

3        Petitioner next contends that the state court violated his sixth amendment right to counsel

by denying his motion to replace his trial counsel pursuant to <u>People v. Marsden</u>, 2 Cal.3d 118

4

(1970).   (Doc. 1, p. 6).  This contention has no merit.

5

6        Prior to trial, Petitioner filed a motion to dismiss counsel based on <u>Marsden</u>.  (CT 91).  At

the <u>Marsden</u> hearing, Petitioner made a number of general and vague statements about counsel

7

that are difficult to precisely interpret; however, it appears that Petitioner took issue with several

8

motions and writs counsel had filed on his behalf.  (RT 2-4).  The trial court gave counsel a

9

chance to respond.  (RT 4).  Counsel indicated the he disagreed with Petitioner that he was not a

10

"state prisoner" under the statute he was charged with violating and that counsel believed the

11

statute also applied to inmates held in county jails.  (RT 4).  Counsel also explained that he did

12

agree with Petitioner that an issue existed about whether the razor blade Petitioner possessed was

13

a "weapon" within the meaning of the statute.  (<u>Id.</u>).  Counsel filed a motion in Superior Court

14

regarding that issue, which was denied, and then filed a writ of prohibition/mandate in the 5th

15

DCA, which was also denied.  (<u>Id.</u>).  Counsel then filed a petition for review in the California

16

Supreme Court, which was still pending.  (<u>Id.</u>).

17        Counsel then indicated that Petitioner had served him with a copy of the <u>Marsden</u> motion

18

and that, in response, counsel provided Petitioner with a copy of <u>Faretta v. United States</u>, the case

19

holding that defendants have a right to represent themselves.  (RT 5).  Counsel gave Petitioner the

20

case to permit him to read about how Petitioner might represent himself.  (<u>Id.</u> at p. 6).

21        After both counsel and Petitioner had made their statements, the trial court summarily

22

denied the <u>Marsden</u> motion.  (RT 6).

23        On appeal, the 5th DCA rejected Petitioner's claim as follows:

24

A defendant is entitled to new counsel only if he or she shows that the current
representation is inadequate or that the attorney-client relationship has irreparably broken
down; that is, the defendant must demonstrate that a failure to appoint new counsel will
substantially impair the defendant's right to the assistance of counsel.  Here, the record
does not show that counsel lacked diligence or competence in representing appellant.
Given the nature of appellant's complaints and the record of the <u>Marsden</u> proceedings, the
trial court did not abuse its discretion by denying appellant's request for new counsel.

25

26

27

28

(LD 4, p. 7)(citations omitted).

20

The California standard is consistent with federal standards.   It is well-established that the Sixth Amendment requires an appropriate inquiry on the record into the grounds for a motion for new counsel, and that the matter be resolved on the merits before the case goes forward.  Schell v. Witek, 218 F.3d 1017, 1025 (9th Cir.2000).  It is also well-settled that a defendant does not have the right to counsel of his choice in a criminal proceeding.  Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624, 109 S. Ct. 2646 (1989); United States v. Rewald, 889 F.2d 836, 856 (9th Cir.1989).

In reviewing a denial of a motion for new counsel, the constitutional question this Court must answer is "whether the denial actually violated [Petitioner's] constitutional rights in that the conflict between [Petitioner] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." Schell, 218 F.3d at 1026.

While a defendant has the right to make a motion for new counsel based on the defendant's perception of ineffective assistance of counsel, he does not have an automatic right to the substitution of counsel simply because he is dissatisfied with appointed counsel's performance.  Jackson v. Ylst, 921 F.2d 882, 888 (9th Cir.1990).  However, the trial court is required to make an appropriate inquiry into the relationship between a defendant and his counsel. Schell, 218 F.3d at 1027.

In the instant case, the trial court conducted a hearing regarding Petitioner's request for new counsel in which Petitioner was provided an opportunity to voice his reasons for new counsel.  It is clear from the record that Petitioner's complaints regarding his counsel's performance centered on their divergent interpretations of the statute that Petitioner was charged with violating.  Petitioner, believed that, because he was in custody of the county jail for a preliminary hearing on murder charges at the time he was accused of possessing a weapon, that the statute prohibiting state prisoners from possessing weapons did not apply to him.  His attorney believed the statute did apply to Petitioner. Also, Petitioner had generalized objections to the various motions and writs counsel had filed in state court, although he never explained specifically what he objected to.  For counsel's part, he gave a thorough recounting of what the

1  record indicates was highly competent, although perhaps from Petitioner's perspective, ultimately

2  unsuccessful, representation.  The trial court denied the motion after a thorough inquiry on the

3  record.  Although Petitioner disagreed with counsel about statutory construction, as well as the

4  process counsel used for filing motions and appeals,  those disagreements did not warrant

5  substitute counsel.

6      Only slightly more compelling is Petitioner's claim that communication had irretrievably

7  broken down, a claim seemingly confirmed by trial counsel when he noted that "for the past more

8  than a month that there has been a clear breakdown of communications between Mr. Tucker and

9  myself." (RT 19).  The 5th DCA rejected these comments as a basis for granting a change of

10 attorneys, holding as follows:

11         These comments cannot be considered in isolation and must be assessed in the context of
           the entire record of the Marsden proceedings.  That record shows that the quoted
12         statements came at the end of a lengthy inquiry into appellant's complaints.  Defense
           counsel simply stated the obvious–that, despite his efforts to convince appellant of the
13         lack of merit in appellant's reading of the statutory language, appellant continued to insist
           that the point be pressed.  Thus, what was missing was not communication; what was
14         missing was agreement on the merits of the defense appellant wished to present.  Counsel
           was not required to raise a meritless issue simply because appellant wanted counsel to do
15         so.

16 (LD 4, pp. 6-7)(citations omitted).

17     Nothing in the 5th DCA's reasoning is either contrary to or an unreasonable application of

18 clearly established United States Supreme Court law.  The trial court's decision after a lengthy

19 hearing was a sound decision in light of controlling state and federal authority.  As the 5th DCA

20 held, and as Respondent correctly argues, the record does not show a total breakdown in

21 communication but rather a disagreement over how to proceed on the merits of the case.  (Doc.

22 43, p. 22).  Thus, the California Court of Appeal's rejection, and the California Supreme Court's

23 summary denial, of this claim, was proper, and was neither contrary to, nor an unreasonable

24 application of, clearly established federal law.

25     This conclusion is not altered by Petitioner's assertion, first raised in his traverse, that he

26 was provided ineffective assistance of counsel.  (Doc. 46, pp. 7; 36-40).   After the answer and

27 traverse had been filed, Petitioner requested leave and was granted leave to "annex" three exhibits

28 to his traverse. (Doc. 47).  Those three exhibits include a letter from counsel to a jail commander

1  which makes derogatory comments about African-Americans and is signed by counsel in his

2  capacity as "Imperial Wizard of Woodlake," a purported email from counsel to another individual

3  also containing racial epithets, and a transcript of Petitioner's <u>Marsden</u> hearing conducted in his

4  murder case and which occurred several days after the trial in the instant case.  (<u>Id.</u>, Exhs. A, B, &

5  C).  The implicit suggestion, i.e., that trial counsel's racist views prevented him from being an

6  effective advocate for Petitioner, is obvious.

7  These annexed exhibits, however, and Petitioner's contention of ineffective assistance,

8  suffer from several serious defects.  First, the claim presented by Petitioner in his petition is

9  framed as a denial of his constitutional rights by the state court when it rejected his <u>Marsden</u>

10  motion, which itself was premised on a breakdown in communication and a failure of trial

11  counsel to agree with Petitioner's interpretation of California law, <u>not</u> on trial counsel's failure to

12  provide competent representation.

13  Indeed, Petitioner's claim of ineffective assistance of counsel was first raised in the

14  traverse.  However, "[a] Traverse is not the proper pleading to raise additional grounds for relief."

15  <u>Cacoperdo v. Demosthenes</u>, 37 F.3d 504, 507 (9th Cir. 1994).  In order for the state to be properly

16  advised of new issues and to have an opportunity to respond, such issues should be raised in an

17  amended petition or in some type of formal supplement to the original petition, e.g., a statement

18  of additional grounds.  <u>Id.</u> at 507.  Habeas claims that are not raised before the district court in the

19  habeas petition are not properly raised, and are not, therefore, cognizable on appeal.  <u>King v.

20  Rowland</u>, 977 F.2d 1354, 1357 (9th Cir. 1992).  Accordingly, Petitioner's contention, first raised

21  in his traverse, that trial counsel was ineffective in violation of the Sixth Amendment, is not

22  cognizable in these proceedings.

23  Second, the documents that purportedly establish counsel's racist leanings are of unknown

24  provenance.  Petitioner has not established their authenticity; indeed, the documents are clearly

25  photocopies rather than originals, and appear to be photocopies of photocopies.  Without evidence

26  establishing the authenticity of these documents, e.g., through testimony from the recipients as to

27  the circumstances under which they received the letter and the email, they are insufficient to

28  ///

1  establish the truth of what they purport to establish, i.e., racist views that resulted in ineffective

2  assistance of counsel.

3       Finally, even assuming, arguendo, that the documents were authentic and that Petitioner

4  had properly pleaded this issue in his petition, the simple fact remains that these documents were

5  never presented to the trial court during the <u>Marsden</u> proceedings below in state court.  Thus, the

6  state court's adjudication of this issue cannot be impugned by that court's failure to take into

7  consideration evidence never presented to it.  Although it does appear that the evidence was

8  subsequently presented to the state court in Petitioner's unrelated murder prosecution, and that his

9  <u>Marsden</u> motion in that case was granted (Doc. 47, Exh. C), that is not the case in this criminal

10  prosecution, and what happened in a separate prosecution does not establish a viable federal

11  habeas claim stemming from the state court's adjudication of Petitioner's <u>Marsden</u> motion in this

12  case.[7]

13       For all of the reasons discussed above, Ground Three should be denied.

14  **Ground Four**          **Whether sufficient evidence was presented to support the conviction for possession of a weapon by an inmate.**

15       Petitioner finally contends that the evidence was insufficient to convict him of the charged

16  offense.  (Doc. 1, p. 6).  Preliminarily, the Court notes that, in a previous section, it has concluded

17  that Ground Four is procedurally barred under <u>Dixon</u>.  However, even assuming it were not, the

18  Court still rejects the claim as being without merit.

19       A.  <u>Standard of Review For Sufficiency of the Evidence</u>

20       The law on sufficiency of the evidence is clearly established by the United States Supreme

21  Court.  Pursuant to the United States Supreme Court's holding in <u>Jackson v. Virginia</u>, 443 U.S.

22  307, 99 S. Ct. 2781 (1979), the test on habeas review to determine whether a factual finding is

23  fairly supported by the record is as follows:

24

25       [7]Indeed, even in the <u>Marsden</u> hearing conducted in Petitioner's murder prosecution, where Exhibits A and B
were apparently presented to the judge as evidence supporting Petitioner's motion, the Court, after considerable

26  effort, was still only able to elicit from Petitioner a claim that trial counsel was ineffective because he had failed to
meet with Petitioner and to keep him properly advised, i.e., that there was a breakdown in communication.  (Doc. 47,

27  Exh. C, p. 12).  The court ultimately granted the <u>Marsden</u> motion on the grounds that counsel had not opposed it and
had declined to comment about Exhibits A and B based on the potential for ongoing litigation.  (<u>Id</u>.).  At no point in

28  those proceedings did Petitioner contend that counsel's racist attitudes themselves actually contributed to the
breakdown in communications or to the ineffectiveness of his attorney's representation.

1
2

    "[W]hether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

3   <u>Jackson</u>, 443 U.S. at 319; <u>see also</u> <u>Lewis v. Jeffers</u>, 497 U.S. 764, 781, 110 S. Ct. 3092 (1990).

4   Thus, only if "no rational trier of fact" could have found proof of guilt beyond a reasonable doubt

5   will a petitioner be entitled to habeas relief.  <u>Jackson</u>, 443 U.S. at 324.   Sufficiency claims are

6   judged by the elements defined by state law.  <u>Id.</u> at 324, n. 16.[8]

7       It appears to be an open question in the Ninth Circuit whether the AEDPA adds a second

8   level of deference to this standard, so that a federal habeas petitioner may obtain relief only by

9   demonstrating that the state court's adjudication on the merits of the claim involved an

10  unreasonable application of <u>Jackson's</u> "no rational trier of fact" standard.  <u>See</u> <u>Garcia v. Carey</u>,

11  395 F.3d 1099, 1102 (9th Cir. 2005); <u>Chien v. Shumsky</u>, 373 F.3d 978, 983 (9th Cir. 2004)(en

12  banc).  However, the Court here need not address that issue because the Court reaches the same

13  result whether the record is reviewed directly under <u>Jackson</u> or under the more deferential filter of

14  the AEDPA standard.  <u>See</u> <u>id.</u>

15      State court factual findings are presumed correct unless the petitioner rebuts the

16  presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); <u>Pollard v. Galaza</u>, 290

17  F.3d 1030, 1035 (9th Cir. 2002).  This presumption of correctness applies to state appellate

18  determinations of fact as well as those of the state trial courts.  <u>Tinsley v. Borg</u>, 895 F.2d 520,

19  525 (9th Cir.1990).  Although the presumption of correctness does not apply to state court

20  determinations of legal questions or mixed questions of law and fact, the facts as found by the

21  state court underlying those determinations are entitled to the presumption.  <u>Sumner v. Mata</u>, 455

22  U.S. 591, 597, 102 S. Ct. 1303 (1982); <u>Powell v. Gomez</u>, 33 F.3d 39, 41 (9th Cir. 1994).

23      B.  <u>Sufficient Evidence was Presented on the Charge of Possession of a Weapon by a State Prisoner</u>

24      In order to prove a violation of California Penal Code § 4502(a), the prosecution is

25  required to establish (1) that Petitioner was in custody in a penal institution, which included a

26
27

---

28      [8]In reviewing sufficiency of evidence claims, California courts expressly follow the standard enunciated in <u>Jackson</u>. <u>See</u> <u>People v. Johnson</u>, 26 Cal.3d 557, 575-578 (1980); <u>see also</u> <u>People v. Thomas</u>, 2 Cal.4th 489, 513 (1992).

county jail (§ 4502( c)), and (2) that he possessed a manufactured weapon.  Cal. Pen. Code

§ 4502(a); CALJIC No. 7.38.  At trial, the testimony established, without contradiction, that

Petitioner was a state prisoner housed in the county jail during the pendency of his preliminary

hearing on a murder charge.  (RT 33-34; 38-39; 81, 84).  As Respondent correctly points out,

Petitioner stipulated to his custodial status.  (RT 84).  As discussed in Ground One, the statute

applies to prisoners housed in a county jail.  Cal. Pen. Code § 4502( c).

        The trial evidence also established that Petitioner had possession of a modified razor

blade and used it to slash his neck in court.  As Respondent correctly argues, the fact that

Petitioner used this weapon against himself to inflict injury makes it difficult for Petitioner to

credibly contend that the modified razor was not a weapon within the meaning of the statute.

Using the razor, Petitioner was able to lacerate his own neck.  (RT 47, 51, 73-74, 81).  Section

4502(a) includes within its meaning of "weapon" any "sharp instrument," a description clearly

applicable to the razor used by Petitioner.

         Finally, Petitioner impliedly contends that since the razor was issued to him by jail

authorities, it cannot be a weapon.  This contention is spurious, since the evidence at trial

established that the razor had been modified from the condition in which it was originally issued

to Petitioner.  (RT 55; 77).[9]  See In re Zepeda, 141 Cal.App.4th 1493, 1499 (2006)(possession by

defendant of razor blades removed from their plastic casings are evidence sufficient to support

disciplinary finding of possession of weapon by inmate).

        Based on the foregoing, the Court concludes that a rational trier of the facts could

certainly have found these two elements of the charged offense were proved beyond a reasonable

doubt.  Jackson, 443 U.S. at 319.  Accordingly, the state court's rejection of this claim was

neither contrary to nor an unreasonable application of clearly established federal law.  Hence,

Ground Four must be denied. _____

/// 

---

[9]One of the sheriff's deputies who restrained Petitioner at his preliminary hearing testified that jail inmates
are given new disposable razors encased in plastic with a handle for personal hygiene each week.  (RT 76).  The
inmates are supposed to shave and then, at the end of the week, dispose of the old razor in order to get a new one.
(Id.).  The razor Petitioner possessed, however, had the plastic covering and handle removed.  (Id.).  If an inmate in
any way alters the razor, it is taken away as contraband. (Id.).

**RECOMMENDATIONS**

For the foregoing reasons, the Court RECOMMENDS that the Petition for Writ of Habeas Corpus (Doc. 1), be DENIED.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fifteen (15) days after being served with a copy of these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the Objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the Objections.  The District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Judge.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:  **March 25, 2008**                     **/s/ Theresa A. Goldner**
                                      UNITED STATES MAGISTRATE JUDGE

27